# EXHIBIT A

# EXHIBIT A

Westlaw

117 F.3d 1425 (Table)

Page 1

117 F.3d 1425 (Table), 1997 WL 377081 (9th Cir.(Nev.))
Unpublished Disposition

(Cite as: 117 F.3d 1425, 1997 WL 377081 (9th Cir.(Nev.)))

**Briefs and Other Related Documents**

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA9 Rule 36-3 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Ninth Circuit.
INDUSTRIAL INDEMNITY, a California stock insurance company, Plaintiff-Appellee, Cross-Appellant,
v.
ROBERT L. HELMS CONSTRUCTION AND DEVELOPMENT CO., INC., a Nevada corporation, Defendant-Appellant, Cross-Appellee.
Nos. 95-15345, 95-15357.

Argued and Submitted June 11, 1997.
July 3, 1997.

Appeal from the United States District Court for the District of Nevada Howard D. McKibben, District Judge, Presiding

Before: REINHARDT, T.G. NELSON, and HAWKINS, Circuit Judges.

MEMORANDUM [FN*]

FN* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3.

A. *Denial of Motion for New Trial*

**\*1** The district court did not abuse its discretion in denying Industrial Indemnity's motion for a new trial pursuant to Fed.R.Civ.P. 59 because there was sufficient evidence as to waiver and estoppel to support the jury's finding of waiver.

Industrial assumed and conducted Helms' defense in both the *Lockwood-Gunn* class action and the *Seeno* indemnity action for over two years without disclaiming liability or reserving its rights under either the primary or the umbrella policy. When asked for a copy of "any" reservation of rights letter Industrial had issued, Industrial responded in a letter that referred to both the primary policy and the umbrella policy that Industrial was not disputing that coverage was available to Helms and that "[t]here has been no reservation of rights letter written to Helms by or on behalf of Industrial." Industrial did not state that it was providing a defense only under the primary policy, or that it was reserving any rights under either the primary or the umbrella policy.

Furthermore, at a court-ordered settlement conference, the insurers were asked to state what the insurance policies were and what the limits were. Industrial stated that its policy limits were $500,000 under a primary policy and $10 million under an umbrella policy. Again, Industrial did not state that it was reserving any rights under either the primary or umbrella policy.

Finally, the settlement demands in both the class action and the indemnity action exceeded the Industrial primary policy limits, putting Industrial on notice that the primary policy limits might be exceeded and that the umbrella policy would come into play. Despite this notice, Industrial continued to provide Helms an unqualified defense, never alerting Helms that it intended to dispute coverage under either the primary or the umbrella policy.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

117 F.3d 1425 (Table)

Page 2

117 F.3d 1425 (Table), 1997 WL 377081 (9th Cir.(Nev.))
Unpublished Disposition

(Cite as: 117 F.3d 1425, 1997 WL 377081 (9th Cir.(Nev.)))

B. *Remittitur of the $30 Million Punitive Damages Award*

The district court erred when it reduced the jury's punitive damage award of $30 million to $6 million without giving Helms the option of accepting the remittitur or having a new trial on the punitive damages issue. *See Central Office Tel., Inc. v. American Tel. & Tel. Co.*, 108 F.3d 981, 993 (9th Cir.1997) ("Upon motion for a new trial, a trial court, finding a verdict excessive may either order a new trial or deny the motion conditional on the party accepting a remittitur."); *Morgan v. Woessner*, 997 F.2d 1244, 1257 (9th Cir.1993) (When a district court rejects a jury award of punitive damages, "it should give the plaintiff the option of a remittitur or a new trial on the punitive damage issue.").

Furthermore, there is no evidence that Helms "accepted" the remittitur. Therefore, Helms did not waive its right to raise this issue on appeal. *See Donovan v. Penn Shipping Co., Inc.*, 429 U.S. 648, 649 (1977).

C. *Attorneys' Fees Under Nev.Rev.Stat. § 18.010*

There were issues as to whether any damage had even occurred during the Industrial policy period and whether the doctrines of waiver or estoppel applied. The fact that the district court denied Helms' summary judgment motions on the issues of waiver and estoppel supports a finding of reasonableness of Industrial's defense. The district court's refusal to award attorneys' fees was therefore not an abuse of discretion.

CONCLUSION

**2 The district court's denial of the motion for new trial or judgment as a matter of law and denial of attorneys' fees is AFFIRMED. The district court's remittitur of the punitive damages award is VACATED and REMANDED with instructions to give Helms the option of either accepting the remittitur or having a new trial on the punitive damages issue.

AFFIRMED in part, VACATED and REMANDED in part. No costs allowed.

117 F.3d 1425 (Table), 1997 WL 377081 (9th Cir.(Nev.)) Unpublished Disposition

Briefs and Other Related Documents (Back to top)

• 1996 WL 33488605 (Appellate Brief) Cross-Appellee's Answering Brief and Appellant's Reply Brief (Nov. 13, 1996)Original Image of this Document (PDF)

• 1996 WL 33488604 (Appellate Brief) Industrial Indemnity's Answering/Opening Brief (Aug. 06, 1996)Original Image of this Document (PDF)

• 1996 WL 33491145 (Appellate Brief) Appellee/Cross-Appellant's Answering/Opening Brief (Apr. 30, 1996)Original Image of this Document (PDF)

• 1996 WL 33488603 (Appellate Brief) Appellant's Opening Brief (Feb. 05, 1996)Original Image of this Document (PDF)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Addendum & Erratum

THE TRIAL REPORTER of Nevada                                                September, 2001

## - WASHOE COUNTY -

Following is a report of a trial about which we were unable to obtain complete details prior to our publication deadline for the June, 2001 issue of THE TRIAL REPORTER of Nevada.

5/7/01 - Judge JAMES WILLIAM HARDESTY - CV 96-05481 - BARNEY (William C. Jeanney of Bradley, Drendel & Jeanney, Ltd.) v WORKAMS AUTO INSURANCE (James English of Leach & English) - BREACH OF CONTRACT - BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING - BREACH OF FIDUCIARY DUTY - UIM COVERAGE DISPUTE - BAD FAITH - FIRST PARTY. Prologue: Plntf, male, age 19, a Nevada resident, employed in automotive body work, operating a 1977 Pontiac, southbound on Probasco Way, at its intersection with York Way, in Sparks, was struck by westbound motorist Burke, who failed to stop for a stop sign, in February 1994. (PLNTF SETTLED HIS CLAIM WITH MOTORIST BURKE'S CARRIER, DAIRYLAND, FOR POLICY LIMITS OF $15,000.) Plntf alleged he sustained multiple, disabling, and severe injuries. Plntf's mother had an insurance policy with Dfnt, for coverage on a 1982 Chevrolet Camaro, with a designated driver of Plntf's mother; on a 1977 Pontiac Trans Am, with a designated driver of David Barney; and on a 1972 Ford Mustang, with designated drivers of Plntf and Sara Brown. Plntf then filed claim with Dfnt, for underinsured motorists' coverage. Plntf alleged policy provided coverage for UM/UIM claims on all three vehicles, and were stackable, under Nevada law, and, therefore, Plntf was entitled to the total of $45,000 in underinsured motorist coverage. As a result of Plntf's injuries, Plntf was placed on permanent lifting restrictions of thirty-five pounds infrequently, and twenty pounds or less on a frequent basis. Plntf is no longer able to perform his occupational duties. Plntf was examined by Charles E. Quaglieri, M.D., a neurologist, who found Plntf had an eight percent permanent impairment of the whole person, as a result of the accident, and Plntf's prognosis was guarded. Plntf was examined by H. H. "Hayden" Hill, M.D., a physiatrist, at Dfnt's request. Dfnt advised Plntf there was only one policy file, and offered Plntf policy limits of $15,000, to settle Plntf's underinsured motorist claim. Plntf also submitted the report of Gilbert R. Coleman, Ph.D., an economist, who was of the opinion Plntf's minimum economic loss was $187,076, to a maximum of $466,997. Plntf's counsel then made demand for UIM policy limits of $45,000. Dfnt rejected Plntf's demand, based on the report of Dr. Hill, who was of the opinion Plntf had only minimal residuals. Dfnt, while confirming the coverage on the three vehicles were stackable, offered Plntf $15,000 of UIM coverage, and asked Plntf to arbitrate the remaining part of the UIM coverage of $30,000. Matter then went to arbitration, in August 1996. Arbitrator awarded Plntf $13,402.11 medical expenses, $37,500 past and future lost wages, and $87,500 for pain and suffering; a total of $188,402.11. Plntf alleged Dfnt knew Plntf was not at fault for the accident, and had sustained a permanent injury, which prevented him from performing his occupational duties, but continued to delay the resolution of Plntf's claim, and engaged in the practice of "low ball" settlement offers, to delay the resolution of claims, and force Plntf to submit the matter to arbitration, in order to receive the amounts which were due and owed. Plntf also alleged Dfnt breached its fiduciary duty, when it denied payment. Prayer:

INJURY EVALUATION SOLUTIONS . . . The Trial Reporter
- 9 -

in excess of $10,000 compensatory damages; plus in excess of $10,000 punitive damages. Ten day trial. Jury out three hours. FOUND DFNT BREACHED ITS DUTY OF GOOD FAITH AND FAIR DEALING, AND AWARDED PLNTF $194,382 COMPENSATORY DAMAGES. During second phase of deliberations, jury out two-plus hours. AWARDED PLNTF $500,000 PUNITIVE DAMAGES.

- CLARK COUNTY -

*Following is a report of a trial about which we were unable to obtain complete details prior to our publication deadline for the June, 2001 issue of THE TRIAL REPORTER of Nevada.*

5/14/01 - Judge RONALD D. PARRAGUIRRE - CV A369066 - HODGE, mother (Anthony W. "Tony" Liker, a sole practitioner); HODGE, daughter; and LEBLANK, sons (D. Neal Tomlinson, Phillip M. Hymanson, and James L. Edwards of Beckley Singleton) v FORD MOTOR COMPANY (Thomas C. Howard of Bowman & Brooke, L.L.P., of Phoenix, Arizona; William J. Conroy and Thomas M. Hinchey of Campbell Campbell Edwards & Conroy, of Wayne, Pennsylvania) - PERSONAL INJURY - PRODUCT LIABILITY - 1994 FORD AEROSTAR - TIRE DEFECT. Plntf mother, was operating a 1994 Ford Aerostar, southbound on I-15, with passengers, Plntf son Derrick, Plntf son Gary, and Plntf daughter, all seated in the back seat. Plntfs alleged the 1994 Ford Aerostar, manufactured by Dfnt, was defective in design and manufacture, as were the tires, and a tire blow out caused Plntf mother to lose control of the vehicle, which rolled over. Plntf children were ejected from the vehicle. Plntfs alleged Dfnt breached its duty of care, by negligently and improperly designing, testing, manufacturing, assembling, and inspecting of the 1994 Ford Aerostar, and there were defects in design and/or manufacture of the tires, seat belt restraint systems, passenger door latches and rollers, and crash attenuation systems, and Dfnt failed to warn of the defects. Plntfs also alleged Dfnt had concealed the defects, and was guilty of an "evil mind". Dfnt denied liability. Plntf mother sought damages for past and future mental suffering, as a result of witnessing the injuries to Plntf children. Plntf son Derrick sustained a closed head injury, skull fracture, third-degree burns of his right foot, and a fractured right femur. Plntf son Gary sustained a closed head injury, facial trauma, and blunt abdominal trauma. Plntf daughter sustained pulmonary contusions, and multiple abrasions. Each Plntf's Prayer: In excess of $10,000 compensatory damages; plus in excess of $10,000 punitive damages. Ten day trial. Jury out two hours. FOUND FOR DFNT.

- WASHOE COUNTY -

*Following is a report of a trial about which we were unable to obtain complete details prior to our publication deadline for the June, 2001 issue of THE TRIAL REPORTER of Nevada.*

5/25/01 - Judge JAMES WILLIAM HARDESTY - CV 98-01374 - BAXTER (David H. Hamilton, a sole practitioner) v KLINE (David A. Harris of McKissick, VanWalkoven & Harris, Chtd.) - PERSONAL INJURY - PRIVATE DRIVE/ THOROUGHFARE MISHAP. Plntf, female, travelling westbound on East Moana Lane, alleged Dfnt, negligently exited the north side of a shopping center, at the southeast corner of Kietzke and East Moana lanes, and collided with Plntf's vehicle. Plntf alleged she sustained a lumbar injury, and is left with chronic pain. Plntf used the videotape deposition of Edward Spencer, M.D. Plntf called Edwin C. Holland, D.O., a general practitioner, of Santa Rosa, California; Edgar Angeloni, M.D.; John K. Bower, M.D., a family practitioner; and John H.

tory damages; an unspecified amount in medical expenses; plus $1,554.87 stipulated lost wages. *Plntf Davis' Prayer: In excess of $10,000 compensatory damages; an unspecified amount in medical expenses; plus $1,376.79 stipulated lost wages.* Plnth made a pretrial demand of $40,000 - Dfnt offered $26,000 (D). (Carrier: Unknown.) Three day trial. Jury out two-plus hours. **AWARDED PLNTF ADLN $19,773 COMPENSATORY DAMAGES, AND AWARDED PLNTF DAVIS $17,500 COMPEN-SATORY DAMAGES.** (Found *Plntf Adlin* to be *thirty-five* percent at fault, and Dfnt to be *sixty-five* percent at fault; therefore, *Plntf Adlin's* award to be reduced to $22,435.70, and *Plntf Davis* to recover $11,375 from Dfnt.) (Post-trial, Dfnt filed motion for attorney's fees and costs.)

- WASHOE COUNTY -

*Following is a report of a trial about which we were unable to obtain complete details prior to our publication deadline for the June, 2003 issue of THE TRIAL REPORTER of Nevada.*

5/27/03 - Judge BRENT T. ADAMS - CV 97-02134 - CRUMMINS (Terry A. Friedman, a solo practitioner; and Matthew L. Sharp of Leverty & Associates Law Chtd.) v AMERICAN NATIONAL INSURANCE COMPANY OF TEXAS (Michael A. Pintar of Allison, MacKenzie, Hartman, Soumbeniotis & Russell, Ltd.; and Janet L. Rasking of Greer, Herz & Adams, L.L.P., of Galveston, Texas) - BREACH OF CONTRACT - BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING - FIRST PARTY BAD FAITH BY AN INSURANCE PROVIDER. *Prologue: In May, 1995, Dfnt's agent, a Nevada resident, contacted Plntfs, for the purpose of selling them an insurance policy, which provided group insurance coverage to Plntfs and their family members, and included medical expenses. Prior to being contacted by Dfnt's agent, Plntfs were insured under another group insurance policy with a different carrier. Plntfs purchased the policy from Dfnt's agent, paid the required premiums, and cancelled their existing policy. In 1996, Plntf wife was diagnosed with cancer, and sought consent for treatment from Dfnt. Dfnt consented and confirmed the medical treatment. Plnth alleged that, following Plntf wife's surgical treatment, Dfnt failed and refused to pay the medical expenses incurred. Plnth also alleged Dfnt's conduct was in bad faith, breached the contract, and violated the covenant of good faith and fair dealing owed to Plnth. Additionally, Plnth alleged Dfnt's non-payment of medical expenses was malicious and fraudulent, with a reckless disregard of Plnth' interests. Dfnt denied Plntfs' allegations. Dfnt called Tony Schrader, J.D., an insurance claims expert. Videotape depositions of Zora A. Levine, M.D., an obstetrician and gynecologist, of Los Gatos, California; Forrest Craig Conrah, M.D., an oncologist; and Steven M. Tilem, M.D., an internist, of San Jose, California; were played to the jury. Prayer: In excess of $10,000 compensatory damages; in excess of $10,000 punitive damages; plus in excess of $200,000 medical expenses.* Seven day trial. Jury out four-plus hours. **AWARDED PLNTF WIFE $983,000 COMPENSATORY DAMAGES.** One day punitive damage hearing. Jury out three hours. **AWARDED PLNTF $450,000 PUNITIVE DAMAGES.** (Post-trial, Court awarded Plntf $255,927.97 pre-judgment interest, plus costs.)



Page 1 of 2

**Parties:** G. Clinton Merrick, Plaintiff vs. Paul Revere Life Insurance Company and UnumProvident Corporation, Defendants

**Court:** United States District Court, District of Nevada

**Docket No.:** CV-S-00731-JCM-RJJ

**Date of verdict:** December 13, 2004

**Plaintiff's Trial Counsel:** Richard H. Friedman, Friedman, Rubin & White, Bremerton, Washington and Julie A. Mersch, Gillock Markley & Killebrew, Las Vegas Nevada. Additional Counsel, Charles McB Sasser, Cox Gage & Sasser, Charlotte, NC

**Plaintiff's Counsel Contact Information:**

| Richard H. Friedman, e-mail:rfriedman@frwlaw.us Friedman, Rubin & White 1126 Highland Avenue Bremerton, Washington 98337 Phone: 360-782-4300 Fax: 360-782-4358 | Julie A Mersch, Esq. e-mail: mersch@gmk-law.com Gillock, Markley & Killebrew, P.C. 428 4th Street Las Vegas, Nevada 89101 Phone: 702-385-1482 Fax: 702-385-2608 | Charles McB. Sasser, Esq. e-mail: Attorney1@aol.com Cox, Gage & Sasser 227 West Trade Street, Ste. 210 Charlotte, North Carolina 2820 Phone: 704-342-4200 Fax: 704-342-0798 |
|---|---|---|

**Facts:** Plaintiff, a venture capitalist, purchased a Paul Revere Life Insurance Company, own-occupation, non-cancelable, guaranteed renewable disability insurance policy in 1989. Policy benefits were $12,000 per month and the policy provided that payment would be made if because of injury or illness Merrick could not perform the important duties of his occupation.

In 1991 and 1992 plaintiff began to suffer the affects of chronic fatigue syndrome though it went undiagnosed for a period of time. His work performance suffered and he was forced out of his venture capital firm in 1993. Plaintiff continued to attempt to work but by 1994 realized he could not meet the grueling business travel and analytic requirements of a venture capitalist. He put his insurer, Paul Revere Life Insurance Company on notice of claim in 1994 and filed his claim in 1995. Paul Revere accepted liability in 1995 and continued to pay benefits until December 1996 when benefits were terminated because of a lack of objective medical evidence of disability. Plaintiff had received his CFS diagnosis from both a local neurologist and the Mayo Clinic. In 1995 after accepting liability on the claim defendant had plaintiff submit to an IME which, while disagreeing with the CFS diagnosis concurred in the finding that plaintiff was disabled from his occupation. In June 1996 and again in November 1996 defendants attempted to settle the disability claim with a low offer. Evidence at trial established that at the time of the November 1996 buyout offers defendant's field representative told plaintiff that if he did not accept the settlement the company might sue him for the back benefits that had been paid. Claim file documents revealed that defendants had no new medical evidence upon which to base the termination and that termination was sought on a rush basis. At the time of termination defendants knew that CFS could not be established by objective medical testing and that such testing as did exist could only point to other causes of plaintiff's medical problems but could not eliminate CFS as the diagnosis. Other evidence in the claim file suggested that prior to terminating benefits defendants considered classifying plaintiff's occupation at time of disability as "unemployed" and considered denying the benefits because plaintiff could do the important duties of an "unemployed person,"

http://www.frwlaw.us/merrick_atla_report.htm                                  6/15/2005

After benefits were terminated plaintiff tried to meet the "objective evidence" standard defendants had imposed and defendants repeatedly rejected the evidence plaintiff proffered. Plaintiff asked defendants what evidence would suffice and was told that they could not advise him since they were not doctors. He offered to take any test defendants wanted but they did not suggest any.

Plaintiff filed suit in February 2000. Defendants then engaged in scorched earth litigation against him seeking to investigate his health, personal, and professional life in a manner they had not prior to terminating the claim.

**Plaintiff's allegations:** The primary allegations of plaintiff's complaint were that in terminating benefits defendants breached the disability insurance contract and acted in bad faith. Plaintiff sought back due benefits, damages for emotional distress, and punitive damages.

**Damages:** At trial defendants stipulated to the amount of back due benefits, $1,147,355.

**Defenses:** At trial defendants claimed that plaintiff had never been disabled. That he had begun planning to file a disability claim in 1993 after he began to have difficulties at work and that his claim was malingered. Defendants had not asserted a malingering claim either at the time benefits were denied or in the interim between initial benefit denial in December 1996 and the filing of suit in 2000. Defendants had never reported any suspicion of fraud to the commissioner of insurance or state attorney general as required by Nevada law.

**Plaintiff's and defendants' experts:** Plaintiff's liability expert: Stephen Prater, insurance practices, San Jose, California; Defendants' expert: James H. Rosenberg, MD, forensic psychiatrist, Los Angeles, CA.

**Result:** Jury verdict. The jury awarded the full stipulated value of benefits $1,147,355 for breach of contract. It awarded $500,000 for emotional distress arising from the bad faith. The jury awarded $2,000,000 in punitive damages against Paul Revere Life Insurance Company and $8,000,000 separately against UnumProvident Corporation for a total verdict of $11,647,355.

**Special Comments:** Claims for chronic fatigue syndrome are difficult to prove and faced with a malingering defense the client's credibility and that of supporting witnesses become a critical factor in case presentation. Plaintiff's theory of the case included that practices begun at Provident Life and Accident Insurance Company were brought to Paul Revere and influenced its claim handling practices with respect to the claim both before termination and after. Plaintiff used corporate documents and expert testimony to establish the nexus. Plaintiff's counsel was also able to circumstantially show that defendants' forensic psychiatrist was part of an insurer developed group of forensic consultants that the defendant's look to for purpose of finding and justifying bases for claim denials. Defendants' expert admitted that outside of litigation he had done 35 IMEs for the defendant insurers. Though he claimed he misspoke he testified that he had started with the assumption of malingering and then looked for facts to support it. Plaintiff demonstrated this was true through cross-examination of the expert which demonstrated he had twisted the meaning of records. Plaintiff also demonstrated that defendants had failed to send their expert all pertinent documents.

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| G. CLINTON MERRICK, JR., ) | CASE NO. CV-S-00731-JCM-RJJ |
| Plaintiff, ) | |
| vs. ) | **FILED** |
| PAUL REVERE LIFE INSURANCE ) COMPANY, a Massachusetts Corporation; ) and UNUMProvident Corporation, (d/b/a ) UNUM LIFE INSURANCE COMPANY ) OF AMERICA and PROVIDENT LIFE ) AND ACCIDENT INSURANCE ) COMPANY) ) Defendants. ) | DEC 13 2004  CLERK, U.S. DISTRICT COURT DISTRICT OF NEVADA |

## VERDICT
(Paul Revere)

1. Did defendant Paul Revere Life Insurance Company breach the disability insurance contact with plaintiff? __Yes__ (answer "yes" or "no")

2. Did defendant Paul Revere Life Insurance Company act in bad faith when dealing with plaintiff? __Yes__ (answer "yes" or "no")

3. Did defendant Paul Revere Life Insurance Company violate the Nevada Unfair Trade Practices Act in its dealings with plaintiff? __No__ (answer "yes" or "no")

If any answer to questions 1-3 is "yes", go on to questions 4. If your answers to questions 1 through 3 are all "no", sign and date the verdict. If you have not completed the verdict form for UNUMProvident do so now. If you have previously completed the verdict as to defendant UNUMProvident inform the court that you are prepared to return your verdicts.

3

280

4. How much do you award for each of the following elements of claimed damages?

   a. Unpaid benefits?  $1,147,355

   b. Other economic losses including overpaid premiums, attorney fees and any other economic damage suffered?  -0-

   c. Mental and emotional distress?  $500,000

If you answered "yes" to question 2, answer question 5.

5. Did defendant Paul Revere Life Insurance Company act with oppression, fraud, or mailice, express or implied, in its dealings with plaintiff such as to justify an award of punitive damages?  YES   (answer "yes" or "no").

6. How much do you award in punitive damages to punish defendant Paul Revere Life Insurance Company and to deter it others from engaging in such similar conduct against Nevada residents in the future?  $2,000,000

DATED this 13th day of DECEMBER, 2004.

*William F. Va/Sb9*
Jury Foreperson

4

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| G. CLINTON MERRICK, JR., ) | CASE NO. CV-S-00731-JCM-RJJ |
| Plaintiff, ) | |
| vs. ) | FILED |
| PAUL REVERE LIFE INSURANCE ) | |
| COMPANY, a Massachusetts Corporation; ) | DEC 1 3 2004 |
| and UNUMProvident Corporation, (d/b/a ) | |
| UNUM LIFE INSURANCE COMPANY ) | CLERK, U.S. DISTRICT COURT |
| OF AMERICA and PROVIDENT LIFE ) | DISTRICT OF NV |
| AND ACCIDENT INSURANCE ) | BY __ |
| COMPANY) ) | |
| Defendants. ) | |

VERDICT
(UNUMProvident)

1. Did defendant UNUMProvident Corporation breach the disability insurance contact with plaintiff? ___Yes___ (answer "yes" or "no").

2. Did defendant UNUMProvident Corporation act in bad faith when dealing with plaintiff? ___Yes___ (answer "yes" or "no")

If your answer to question 1 or 2 is "yes", go on to question 3. If your answers to questions 1 and 2 are both "no", sign and date the verdict. If you have not completed the verdict form for defendant Paul Revere Life Insurance Company do so now. If you have previously completed the verdict as to defendant Paul Revere inform the court that you are prepared to return your verdicts.

3. How much do you award for each of the following elements of claimed damages?

5

    a. Unpaid benefits?    $1,147,355

    b. Other economic losses including overpaid premiums, attorney fees and any other economic damage suffered?    0

    c. Mental and emotional distress?    $500,000

If you answered "yes" to question 2, answer question 4.

4.    Did defendant UNUMProvident Corporation act with oppression, fraud, or mailice, express or implied, in its dealings with plaintiff such as to justify an award of punitive damages?    Yes    (answer "yes" or "no").

5.    How much do you award in punitive damages to punish defendant UNUMProvident Corporation and to deter it others from engaging in such similar conduct against Nevada residents in the future?    $8,000,000

DATED this 13TH day of DECEMBER, 2004.

_William T. V_____
Jury Foreperson

6